UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| KENNETH G. CHARRON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:18-cv-00032-PLC |
| | ) | |
| MICHAEL WHITLOCK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Kenneth G. Charron, an inmate at the Northeast Correctional Center, for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Plaintiff has acquired "three strikes" pursuant to 28 U.S.C. § 1915(g) and can only proceed in forma pauperis if he demonstrates that he is "under imminent danger of serious physical injury." For the reasons discussed below, the Court will grant plaintiff's motion to proceed in forma pauperis against defendants Miguel Paniagua and Larry Allen, and will assess an initial partial filing fee of $2.04. *See* 28 U.S.C. § 1915(b)(1). However, as to defendants Michael Whitlock, Mr. Lovelace, Corizon Medical Review Board Members, John Does 1-3, Denise Langley, and Mrs. Getti, plaintiff's motion to proceed in forma pauperis is denied, and the claims against these defendants are dismissed without prejudice subject to plaintiff refiling them in a separate complaint and paying the $400 filing fee. *See* 28 U.S.C. § 1915(g).

## 28 U.S.C. § 1915(g)

The Prison Litigation Reform Act of 1996 enacted what is commonly known as the "three strikes" provision of 28 U.S.C. § 1915(g). *Orr v. Clements*, 688 F.3d 463, 464 (8th Cir.

2012). Section 1915(g) provides in relevant part:

> In no event shall a prisoner bring a civil action…under this section if the prisoner has, on three or more prior occasions, while incarcerated or detained in any facility, brought an action…in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). An indigent inmate who has acquired three strikes may file a lawsuit if he or she is under imminent danger of serious physical injury. *Higgins v. Carpenter*, 258 F.3d 797, 800 (8th Cir. 2001). The "imminent danger" exception provides a "safety valve for the three strikes rule to prevent impending harms." *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003). However, in order for this exception to apply, an otherwise ineligible prisoner must be in imminent danger at the time of filing. *Ashley v. Dilworth*, 147 F.3d 715, 717 (8th Cir. 1998). Allegations of past imminent danger are not sufficient to trigger the exception to § 1915(g). *Id.* When an inmate is granted leave to proceed in forma pauperis under the imminent danger exception, the in forma pauperis "action must be limited to imminent danger claims that have been properly exhausted." *McAlphin v. Toney*, 375 F.3d 753, 755 (8th Cir. 2004).

Plaintiff is a prisoner and has filed lawsuits in the past. Review of this Court's files and those of the United States District Court for the Western District of Missouri indicate that plaintiff has accumulated three strikes by having three civil actions dismissed as frivolous. *See Charron v. Groose*, No. 92-CV-4511 (W.D. Mo.); *Charron v. Mitchell*, No. 92-CV-4567 (W.D. Mo.); and *Charron v. Jawade*, No. 4:93-CV-2485 (E.D. Mo.). Accordingly, plaintiff may only proceed in forma pauperis if he "is under imminent danger of serious physical injury." *See* 28 U.S.C. § 1915(g).

In the instant complaint, plaintiff alleges that he suffers from a number of medical

2

conditions, including cancer, kidney disease, renal failure, and pain in his arms, legs, and back. Because of these issues, plaintiff is supposed to receive a particular medical diet. Plaintiff alleges that he has been denied this diet by both medical and food preparation staff in retaliation for his filing of grievances. As a result of delays or denials in receiving his medical diet, plaintiff claims that he has suffered constant pain, hunger, loss of weight, and ongoing kidney deterioration.

Having carefully reviewed the complaint, and for the reasons discussed more fully below, the Court finds that plaintiff has sufficiently alleged claims of imminent danger against defendants Miguel Paniagua and Larry Allen. Accordingly, plaintiff's motion to proceed in forma pauperis as to claims against those defendants will be granted. On the other hand, plaintiff has failed to sufficiently allege imminent danger against defendants Michael Whitlock, Mr. Lovelace, Corizon Medical Review Board Members, John Does 1-3, Denise Langley, and Mrs. Getti. Therefore, as to those defendants, plaintiff's motion to proceed in forma pauperis is denied, and plaintiff's claims against them are dismissed without prejudice, subject to plaintiff refiling a separate complaint and paying the $400 filing fee.

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these

monthly payments to the Clerk of the Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

In support of the instant motion, plaintiff submitted an affidavit and a certified inmate account. (Docket No. 3). The certified inmate account statement showed an average monthly deposit of $10.20. The Court will therefore assess an initial partial filing fee of $2.04, which is 20 percent of plaintiff's average monthly deposit.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim for relief under 42 U.S.C. § 1983, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id*. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679.

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complain in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se

complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

### The Complaint

Plaintiff is an inmate at the Northeast Correctional Center in Bowling Green, Missouri. He brings this complaint pursuant to § 1983. His complaint names the following defendants: Michael Whitlock; Miguel Paniagua; Mr. Lovelace; Corizon Medical Review Board Members, John Does 1-3; Larry Allen; Denise Langley; and Mrs. Getti. The defendants are sued in both their individual and official capacities.

Plaintiff's statement of claim consists of eighty-eight typed paragraphs. He states that in 2013, a cat scan showed a mass on his right kidney. (Docket No. 1 at 6). After a follow-up MRI, plaintiff states that he was told he needed back surgery. Plaintiff states he had back surgery on January 20, 2014, and that metal rods were placed in his lower back. On January 27, 2014, plaintiff states that he saw Dr. Archer, who told him that he was being put in to see a urologist due to the kidney mass, pain, and a high white blood count. Plaintiff claims that on April 11, 2014, Dr. Archer informed him that the Corizon Medical Review Board had denied his request to see a urologist. On May 2, 2014, plaintiff was informed by a second doctor, Dr. Cabrera, that the Corizon Medical Review Board had denied a request for plaintiff to see his back surgeon for a follow-up appointment. (Docket No. 1 at 6-7). Nonetheless, plaintiff states that he saw a

urologist, Dr. Vogt, on May 29, 2014. (Docket No. 1 at 7).

After meeting with the urologist, plaintiff states that it was determined that he had two tumors and a blockage of his kidney tubules, a condition called acute interstitial nephritis. On August 22, 2014, plaintiff states that Dr. Vogt took biopsies of the two tumors and put in a stint to open his ureter. Plaintiff states that at a follow-up appointment with Dr. Vogt, Dr. Vogt informed him that his right kidney needed to be removed. (Docket No. 1 at 7-8).

On May 21, 2014, plaintiff states that his medical diet was renewed for another year. (Docket No. 1 at 8). He states that his diet at the time was a "Bland Diet Double Portions," and was started as far back as 2002.

On October 31, 2014, plaintiff had surgery to remove his right kidney. Over the next 28 months, plaintiff states that he saw Dr. Vogt approximately once every ninety days, and that five more cancerous tumors were removed. Plaintiff claims that on June 26, 2015, defendant Allen ordered that plaintiff be given beans twice a day, and no meat, as plaintiff's medical diet. He also alleges he was sometimes given beans three times a day, with no meat. Plaintiff claims that when he asked a cook what Allen was doing, plaintiff was told that Allen was "trying to get you guys off of the special diets."

Plaintiff alleges that on June 27, 2015, defendants Allen, Langley, and Getti began giving him food items he was not allowed on his diet. Plaintiff states that when he told these defendants he could not eat the items he had been given, he was "told by all Defendants at different times, if you can't eat it don't, but that is all [you're] going to get." (Docket No. 1 at 8-9). He alleges that he was told that if he did not like the food he was given, he could do without. He further claims that he has lost twenty pounds due to the inappropriate diet, and that his kidney function has worsened. (Docket No. 1 at 9).

On July 16, 2015, plaintiff claims that Dr. Cabrera changed his Double Bland Diet to a Double Renal Diet because of his kidney issues, his recurring cancer, and his weight loss. Plaintiff alleges that on July 20, 2015, Dr. Cabrera told plaintiff that defendant Allen had stopped his medical diet. According to plaintiff, Dr. Cabrera told him that Allen's wife, a nurse who works for Corizon, cancelled Dr. Cabrera's diet order. Plaintiff states that Dr. Cabrera advised him that if he filed on Allen and his wife, plaintiff would get his diet. Sometime in July or August 2015, plaintiff states he filed an informal resolution request against Allen and his wife. He further states that on August 29, 2015, he filed a grievance against Allen and his wife claiming that he was not receiving his medical diet, and that he was being subjected to retaliation. (Docket No. 1 at 9-10). On September 3, 2015, plaintiff states that defendant Langley told him he would start receiving a Double Renal Diet. (Docket No. 1 at 10). However, plaintiff alleges his diet was stopped again after he filed a grievance appeal against defendant Allen and his wife on November 4, 2015.

Plaintiff states that on August 11, 2016, he was called to medical and informed by a nurse that his renal diet was being stopped because his kidney function was a three. He states that he informed the nurse that he was told by defendant Allen, along with defendants Langley and Getti, that he could "get a tray off the line or do without." Plaintiff claims he saw Dr. Rhodes on August 12, 2016, and that Dr. Rhodes ordered him placed back on his Renal Diet. (Docket No. 1 at 10-11). On August 15, 2016, plaintiff states that he filed another informal resolution request against defendant Allen because Allen would not give him his medical diet. (Docket No. 1 at 11).

On June 27, 2017, plaintiff states that he met with defendant Whitlock. (Docket No. 1 at 14). Plaintiff claims that Whitlock told him that the Corizon Medical Review Board had denied

his and Dr. Vogt's numerous requests that plaintiff be seen by an oncologist. Plaintiff further alleges that Whitlock told him that the Medical Review Board said there was nothing wrong with plaintiff "that could be fixed" and that they were not going to spend any more money on him. On June 28, 2017, plaintiff claims that Whitlock told him that the Medical Review Board was not going to approve anything that he requested for plaintiff.

Plaintiff states that he had six appointments with defendant Dr. Paniagua on August 9, 2017. He states that Dr. Paniagua confirmed that his cancer was spreading to his prostate. He also claims that Dr. Paniagua told him it was no longer cost-effective to treat him, and that he had become a liability to Corizon. (Docket No. 1 at 15). Plaintiff states that Dr. Paniagua advised him that Corizon was not going to treat his back, legs, arms, and kidney disease, because the cancer was going to get him. Further, plaintiff states that Dr. Paniagua told him that defendant Allen had been "going to Jefferson City" regarding plaintiff's diet, and that Dr. Paniagua was not happy with Allen about this.

On October 18, 2017, plaintiff states he had an appointment with Dr. Paniagua and that Dr. Paniagua renewed his medications. (Docket No. 1 at 16). However, plaintiff claims that when he asked Dr. Paniagua about his kidney pain, trouble passing urine, cancer, back, legs, and arms, he was told that someone else will take care of those problems. Plaintiff further claims that on November 7, 2017, Dr. Paniagua refused to speak with him about plaintiff's kidney pain and inability to pass urine.

Plaintiff states that during a November 14, 2017 appointment with defendant Whitlock, Whitlock told plaintiff that defendant Allen had gone to Jefferson City to stop plaintiff's medical diet. (Docket No. 1 at 17). He also states that Whitlock told plaintiff that plaintiff should watch himself, and that Whitlock would deal with Allen. On November 29, 2017, during an

appointment with Dr. Paniagua, plaintiff claims that Dr. Paniagua refused to talk about plaintiff's medical issues with him.

Plaintiff states he had six appointments to see defendant Dr. Paniagua on January 1, 2018. He states that Dr. Paniagua told plaintiff that his prescriptions would be renewed. Also during the appointment, plaintiff claims that Dr. Paniagua took copies of plaintiff's medical lay-ins but refused to return them. (Docket No. 1 at 18). He alleges that he eventually received a renewal of his Renal Diet, but that none of his other lay-ins were renewed. However, plaintiff does not allege that he suffered any harm or injury connected to the handling of his medical lay-ins. On January 12, 2018, plaintiff states that he filed an informal resolution request on Dr. Paniagua and his nurse for failing to return his copies of his medical lay-ins.

On February 20, 2018, plaintiff states that he requested a copy of the Renal Diet menu because defendants Allen and Langley refused to give him one. (Docket No. 1 at 19). Plaintiff states that on March 19, 2018, after receiving a copy of the Renal Diet menu, he requested that Sergeant McDonald accompany him when he went to pick up his food tray. He claims that Sergeant McDonald and Lieutenant Detienne went with him, and observed that he was given "processed turkey ham," which is not on the Renal Diet menu. Plaintiff alleges that Sergeant McDonald and Lieutenant Detienne confronted defendant Langley with the menu, whereupon Langley said that plaintiff was not supposed to have the menu, and that she could give plaintiff whatever she wanted. (Docket No. 1 at 19-20).

On March 28, 2018, plaintiff states that he had an appointment scheduled with Dr. Paniagua. (Docket No. 1 at 20). He claims that when he arrived he requested a medical refusal because he had a "lawsuit and grievance" pending against Dr. Paniagua. He further claims that when he gave the form to Dr. Paniagua, Dr. Paniagua read it, and then told plaintiff that "you

9

don't file on me, it's not good for you." Shortly thereafter, on April 2, 2018, plaintiff alleges that he was told by defendant Langley that he would not get a diet tray because defendants Allen and Dr. Paniagua had stopped it. (Docket No. 1 at 21). He alleges that after she advised him that his diet tray had been stopped, Langley told him that he could "file on that."

Plaintiff alleges that the denials, delays, and interferences with his Renal Diet has caused him to suffer constant pain, hunger, loss of weight, and kidney deterioration. (Docket No. 1 at 22). Plaintiff seeks money damages in an amount to be determined at jury trial. (Docket No. 1 at 23).

Discussion

Plaintiff's complaint names the following defendants: Michael Whitlock; Miguel Paniagua; Mr. Lovelace; Corizon Medical Review Board Members, John Does 1-3; Larry Allen; Denise Langley; and Mrs. Getti. Plaintiff has moved to file his complaint in forma pauperis. Because plaintiff has accrued three strikes pursuant to § 1915(g), he can only proceed in forma pauperis if he is in imminent danger. Having carefully reviewed plaintiff's complaint, the Court has determined that plaintiff's claims against defendants Dr. Paniagua and Allen sufficiently allege imminent danger, as well as state claims sufficient to survive § 1915 review. However, plaintiff has failed to allege imminent danger with respect to the claims against defendants Whitlock, Lovelace, the Corizon Medical Review Board Members, Langley, and Getti; therefore, the claims against these defendants will be dismissed without prejudice.

## A.  Defendant Paniagua

As noted above, an indigent inmate who has acquired three strikes may nonetheless file a lawsuit if he or she is under imminent danger of serious physical injury. *Higgins*, 258 F.3d at 800. In order for this exception to apply, the prisoner must be in imminent danger at the time of

the filing. *Ashley*, 147 F.3d at 717. Allegations of past imminent danger are not sufficient to
trigger the exception to § 1915(g). *Id*.

Here, Plaintiff's claim that Dr. Paniagua improperly halted his medical diet is sufficient
to allege imminent danger. Plaintiff asserts that he has serious medical conditions including
cancer and kidney disease. As a result of these conditions, plaintiff is required to be on a specific
medical diet. Plaintiff has alleged that he has been on a medical diet as far back as 2002, and that
his medical diet has periodically been renewed since that time.

While being treated by Dr. Paniagua, plaintiff came to believe that Dr. Paniagua was not
trying to help him. Specifically, he alleges that Dr. Paniagua refused to discuss plaintiff's
medical issues with him, and that Dr. Paniagua told him that Corizon was no longer going to pay
for plaintiff's treatment. Plaintiff was also upset that Dr. Paniagua had taken copies of plaintiff's
medical lay-ins and had not returned them. He does not, however, allege that any harm occurred
as a result of his lay-ins not being returned.

As a result of this, plaintiff filed a grievance against Dr. Paniagua. He also filled out a
medical refusal because plaintiff no longer trusted Dr. Paniagua. Plaintiff alleges that when he
showed Dr. Paniagua the medical refusal on March 28, 2018, Dr. Paniagua told him: "you don't
file on me, it['s] not good for you." Shortly thereafter, on April 2, 2018, plaintiff claims that Dr.
Paniagua, along with defendant Allen, stopped his medical diet in retaliation for filing a
grievance against him. Plaintiff alleges that the interference with his medical diet has caused him
to suffer pain, hunger, weight loss, and worsening kidney deterioration. Taking into account
plaintiff's serious, even life-threatening medical conditions, Dr. Paniagua's alleged interference
with plaintiff's medical diet, undertaken for allegedly non-medical reasons, places plaintiff in
imminent danger of serious physical injury, including further weight loss and kidney

11

deterioration. Accordingly, plaintiff's motion to proceed in forma pauperis is granted as to plaintiff's claim against Dr. Paniagua that Dr. Paniagua has been deliberately indifferent to plaintiff's medical needs, and that he has retaliated against plaintiff for filing a grievance.[1]

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court is required to determine whether plaintiff's case is frivolous or malicious or fails to state a claim upon which relief can be granted. In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege sufficient facts to show that (1) the defendant acted under color of state law, and (2) that the allegedly wrongful conduct deprived him or her of a constitutionally protected federal right. *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010). Here, plaintiff's claims against Dr. Paniagua in his individual capacity for deliberate indifference to his medical needs and for retaliation are sufficient to survive § 1915(e)(2)(B) review.

The government has an obligation to provide medical care to those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To demonstrate constitutionally inadequate medical care, the inmate must show that a prison official's conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997). Proving deliberate indifference requires a showing that a "medical provider knew of and disregarded a serious medical need." *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 795 (8th Cir. 2006). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997).

---

[1] The Court notes that plaintiff's complaint contains several references to Dr. Paniagua refusing to speak with plaintiff about plaintiff's medical concerns. However, plaintiff fails to allege any facts that would indicate that Dr. Paniagua's alleged refusal to speak to plaintiff placed him in imminent danger of serious physical injury. There is no indication, for example, that Dr. Paniagua ever refused to provide a specific course of treatment that plaintiff required. Accordingly, plaintiff's motion to proceed in forma pauperis on these claims is denied. Plaintiff will only be allowed to proceed in forma pauperis on his claim that Dr. Paniagua was deliberately indifferent in halting his medical diet, and his claim that Dr. Paniagua retaliated against him for filing a grievance.

In order to demonstrate retaliation under the First Amendment, a plaintiff "must show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Spencer v. Jackson Cty., Mo.*, 738 F.3d 907, 911 (8th Cir. 2013). The retaliatory conduct does not need to be a constitutional violation in order to be actionable. *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001). However, the "reason for the government official's action must have been to prevent the plaintiff from engaging in the protected activity." *Saylor v. Nebraska*, 812 F.3d 637, 646 (8th Cir. 2016).

Dr. Paniagua is a doctor for Corizon Health, LLC, providing medical care to the inmates of the Northeast Correctional Center. As such, plaintiff has properly alleged that Dr. Paniagua was acting under color of state law. Furthermore, plaintiff claims that Dr. Paniagua has been deliberately indifferent to plaintiff's medical needs by stopping his medical diet in retaliation for plaintiff having filed a grievance against him. He claims that he has several serious medical conditions, including cancer, kidney disease, and renal failure. These conditions have been diagnosed by medical professionals. Moreover, according to plaintiff, Dr. Paniagua was well aware of plaintiff's medical needs. Due to these issues, plaintiff was placed on a medical diet. Initially, plaintiff states he was on a "Bland Diet," but that was changed to a "Renal Diet" following the removal of a kidney. He claims that he was placed on a medical diet by a doctor, and that it is necessary for his health. Nevertheless, according to the complaint, Dr. Paniagua ordered plaintiff taken off the medical diet, allegedly in retaliation for plaintiff filing a grievance against him. Specifically, plaintiff alleges that Dr. Paniagua told him: "you don't file on me, it['s] not good for you." Thereafter, plaintiff's medical diet was stopped, and he was told that Dr.

Paniagua was responsible.

Accepting these allegations as true, plaintiff's claims of deliberate indifference and retaliation survive initial review. Plaintiff has made out a claim of deliberate indifference by alleging Dr. Paniagua intentionally took him off his necessary medical diet, to the detriment of his health. In doing so, plaintiff asserts that Dr. Paniagua had no valid medical reason for stopping his medical diet. He has claimed that his Renal Diet is a serious medical need, required due to his kidney disease and renal failure. His complaint states that since being taken off the diet, he has suffered from pain, hunger, weight loss, and worsening kidney function. The necessity of his medical diet is further demonstrated by the graveness of plaintiff's underlying conditions, which as mentioned previously, include cancer, kidney disease, and renal failure. This is sufficient to allege deliberate indifference.

Plaintiff has also made out a claim for retaliation that is sufficient to pass initial review. He has alleged that after filing a grievance against Dr. Paniagua, Dr. Paniagua took adverse action against him by halting his medical diet. He has claimed that Dr. Paniagua's halting of his medical diet was in response to plaintiff's grievance; specifically, plaintiff asserts that Dr. Paniagua told plaintiff that "you don't file on me, it['s] not good for you."  The complaint also alleges a chilling effect on plaintiff's participation in the grievance process because Dr. Paniagua's action placed plaintiff's health in danger. This is sufficient to allege a claim of retaliation.

Plaintiff's claims against Dr. Paniagua for deliberate indifference and retaliation are sufficient to survive initial review under 28 U.S.C. § 1915(e)(2)(B). As such, the Clerk of Court will be directed to serve process upon Miguel Paniagua in his individual capacity.

On the other hand, plaintiff has not stated a claim against Dr. Paniagua in his official

14

capacity. A suit brought against a state official in his or her official capacity pursuant to § 1983 is not a suit against the official, but rather a suit against the official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016).  In other words, the real party in interest in an official-capacity suit is not the named official, but the governmental entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). *See also Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"). As such, a suit against Dr. Paniagua in his official capacity is actually a suit against the Missouri Department of Corrections.

Liability of a governmental entity under § 1983 may attach if the constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *See Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018). Thus, there are three ways in which plaintiff can prove that the Missouri Department of Corrections is liable for Dr. Paniagua's alleged actions. In this case, though, plaintiff has not alleged any facts whatsoever referring to an official policy, an unofficial custom, or a failure to train. Accordingly, plaintiff's claim against Dr. Paniagua in his official capacity must be dismissed.

## B. Defendant Allen

As with Dr. Paniagua, plaintiff's claim that defendant Allen improperly halted his medical diet is sufficient to trigger the imminent danger exception. Plaintiff, as discussed previously, alleges that he has a number of serious medical conditions necessitating a special medical diet. He claims that as far back as 2015, Allen, a food service manager, was giving him food items he was not allowed on his diet. When plaintiff complained, he was told "that is all you are going to get." Plaintiff claims that when he filed an informal resolution request and a

15

grievance against Allen, his diet was briefly restarted. However, according to plaintiff, Allen once again stopped the diet when plaintiff filed a grievance appeal. Plaintiff alleges that he filed another informal resolution request against Allen in 2016, when Allen refused to give him his doctor-ordered diet. In August and November of 2017, plaintiff claims that both Dr. Paniagua and Dr. Whitlock told plaintiff that Allen was attempting to circumvent their orders and get plaintiff's diet stopped. Finally, on April 2, 2018, plaintiff alleges that Allen, along with Dr. Paniagua, stopped his medical diet in retaliation for plaintiff's grievances.

Plaintiff's complaint asserts several instances wherein his medical diet was stopped, restarted, and stopped again. Those past instances, according to plaintiff, occurred in 2015, 2016, and 2017. These do not fit within the imminent danger exception of § 1915(g), requiring that imminent danger be present at the time of filing, because this case was filed on May 7, 2018, a substantial time after those earlier events. *See Ashley*, 147 F.3d at 717 ("[A]n otherwise ineligible prisoner is only eligible to proceed IFP if he is in imminent danger at the time of the filing. Allegations that the prisoner has faced imminent danger in the past are insufficient to trigger this exception").

However, plaintiff's claim that Allen, along with Dr. Paniagua, stopped his medical diet on April 2, 2018, does sufficiently allege imminent danger. According to plaintiff's complaint, this action was not undertaken for valid reasons. Rather, plaintiff alleges that Allen had been trying to get him off of his medical diet for some time. Furthermore, plaintiff asserts that Allen was acting in retaliation for past grievances that plaintiff filed against him. Plaintiff alleges that Allen's refusal to give him his medical diet caused him pain, hunger, weight loss, and deterioration of his kidney condition. Taking into account plaintiff's serious underlying medical conditions, which are the reason that he is supposed to receive a medical diet in the first place,

16

his allegation that Allen refused to give him the appropriate diet beginning on April 2, 2018 is sufficient to demonstrate imminent danger. Accordingly, plaintiff's motion to proceed in forma pauperis is granted as to plaintiff's claim that on April 2, 2018, defendant Allen inappropriately halted plaintiff's medical diet, and that Allen did so in retaliation against him.

Plaintiff's claims against Allen for failing to provide an adequate diet and for retaliation are sufficient to survive review under § 1915(e)(2)(B). Prisoners have a right to receive nutritionally adequate food. *Wishon v. Gammons*, 978 F.2d 446, 449 (8th Cir. 1992). *See also Divers v. Dep't of Corr.*, 921 F.2d 191, 194 (8th Cir. 1990) ("Prison officials must…provide a nutritionally adequate diet"); *Burgin v. Nix*, 899 F.2d 733, 734 (8th Cir. 1990) ("One constitutional right retained by the prisoner is the right to an adequate diet"); *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998) ("Prison officials must ensure that inmates receive adequate food, clothing, and medical care"). "A plaintiff may demonstrate violation of his constitutional rights by evidence that the food he was served was nutritionally inadequate or prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food." *Ingrassia v. Schafer*, 825 F.3d 891, 897 (8th Cir. 2016).

In order to demonstrate retaliation under the First Amendment, a plaintiff "must show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Spencer*, 738 F.3d at 911. The retaliatory conduct does not need to be a constitutional violation in order to be actionable. *Cody*, 256 F.3d at 771. However, the "reason for the government official's action must have been to prevent the plaintiff from engaging in the protected activity." *Saylor*, 812 F.3d at 646.

17

Here, plaintiff's claim that Allen has violated his right to receive nutritionally adequate food is sufficient to pass through initial reveiw. He has asserted that he requires a medical diet, specifically a Renal Diet, which was ordered for him by a doctor following the removal of a kidney. He has alleged that Allen, who is a food service manager, has wrongly refused to give him his medical diet.  He has further claimed that his health has suffered as a result of him not receiving his medical diet. Specifically, he states that he has suffered pain, weight loss, hunger, and a worsening of his kidney condition. Taking these allegations as true, plaintiff has demonstrated that by being refused his medical diet, he is not receiving nutritionally adequate food. Moreover, he has also demonstrated that not receiving his medical diet poses a danger to his health, and has already caused his health to suffer.

Plaintiff has also made out a claim of retaliation that is sufficient to pass initial review. He alleges that he has filed a grievance against Allen for stopping his medical diet in the past. He further claims that Allen has stopped his diet again, in response to plaintiff's filing of a grievance. His complaint alleges that by stopping his diet, Allen has placed his health in danger, thereby causing a chill in his participation in the grievance process. This is sufficient to allege a claim of retaliation.

Plaintiff's claims against Allen for denying him nutritionally adequate food and for retaliation are sufficient to survive initial review under 28 U.S.C. § 1915(e)(2)(B). As such, the Clerk of Court will be directed to serve process upon Larry Allen in his individual capacity.

Plaintiff has not, however, stated a claim against defendant Allen in his official capacity. A suit brought against a state official in his or her official capacity pursuant to § 1983 is not a suit against the official, but rather a suit against the official's office. *Will*, 491 U.S. at 71. As such, a suit against Allen in his official capacity is a suit against his employer, the Missouri

Department of Corrections. Liability of a governmental entity under § 1983 may attach if the constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *See Mick*, 883 F.3d at 1089. Plaintiff has made no factual allegations regarding the existence of an unconstitutional official policy, an unofficial custom, or a failure to train or supervise. Accordingly, plaintiff's claim against Allen in his official capacity must be dismissed.

## C. Defendants Whitlock, Lovelace, Corizon Medical Review Board Members, John Does 1-3, Langley, and Getti

An allegation that a prisoner has faced imminent danger in the past is insufficient to trigger the imminent danger exception, but a complaint is sufficient if it alleges that the inmate is in imminent danger at the time of filing. *McAlphin v. Toney*, 281 F.3d 709, 711 (8th Cir. 2002). In this case, plaintiff's claims against defendants Whitlock, Lovelace, Corizon Medical Review Board Members, Langley, and Getti fail to allege sufficient facts to enable plaintiff to use the imminent danger exception in § 1915(g).

### i.    Defendant Whitlock

Plaintiff states that on at least six occasions, defendant Whitlock told him that Corizon would not approve or pay for treatment. However, at no point does plaintiff allege that Whitlock refused to provide treatment, or seek approval for treatment. To the contrary, plaintiff's complaint asserts that on different occasions Whitlock ordered x-rays on plaintiff. He also admits that Whitlock disapproved of defendant Allen's attempts to have plaintiff's medical diet stopped. Nothing that Whitlock is alleged to have done threatened plaintiff with "imminent danger of serious physical injury" at the time of filing. Indeed, nothing that plaintiff asserts about Whitlock appears to put plaintiff in any danger whatsoever, imminent or otherwise. Accordingly,

19

plaintiff's motion to proceed in forma pauperis against Whitlock must be denied, and his claims against Whitlock dismissed without prejudice.

### ii.    Defendant Lovelace

Defendant Lovelace is mentioned only twice in plaintiff's complaint, and then only indirectly. In the first instance, plaintiff alleges that on August 9, 2017, Dr. Paniagua told plaintiff that Lovelace was "doing what Larry Allen wants." He does not, however, explain exactly what that means. In the second instance, plaintiff claims that Whitlock told him that Allen "had again gone to Jefferson City to…Defendant Lovelace…to get my [d]iet stopped." Neither of these two assertions, which are devoid of further factual support or explanation, allege any inappropriate conduct on behalf of Lovelace that might place plaintiff in imminent danger. He does not allege, for instance, that Lovelace ever took any steps to actually stop plaintiff's medical diet. Moreover, even if the Court infers that in "doing what Larry Allen wants," Lovelace was acting inappropriately, plaintiff has failed to demonstrate how this event, taking place on August 9, 2017, placed him in imminent danger as of the filing date of May 7, 2018. Accordingly, plaintiff's motion to proceed in forma pauperis against Lovelace must be denied, and his claims against Lovelace dismissed without prejudice.

### iii.    Defendant Corizon Medical Review Board Members, John Does 1-3

Plaintiff's allegations against defendant Corizon Medical Review Board Members relies on statements made to plaintiff by his various doctors. Plaintiff alleges that on April 11, 2014, Dr. Archer told him that the Corizon Medical Review Board had denied his request for plaintiff to see a urologist. Nonetheless, plaintiff does concede that he eventually saw a urologist, Dr. Vogt. On May 2, 2014, plaintiff claims that Dr. Cabrera told him that the Corizon Medical Review Board had denied a request for a follow-up appointment for plaintiff's back surgery. On

June 27, 2017, plaintiff claims that Dr. Whitlock told him that the Corizon Medical Review Board denied Whitlock's request that plaintiff see an oncologist.

These allegations fail to demonstrate how the Corizon Medical Review Board Members have placed plaintiff in imminent danger. Plaintiff never specifies the manner in which the Board's decisions affected or will affect his health. He does not specify any particular treatment that he has been denied, much less demonstrated that such denial will harm him. Moreover, his claims against the Board all stem from actions taken in the past. The alleged Corizon Medical Review Board decisions that plaintiff learned about in April and May of 2014 occurred at least four years before plaintiff filed this lawsuit. The alleged Corizon Medical Review Board decision that plaintiff learned of on June 27, 2017 occurred at least ten months before filing. However, the imminent danger exception focuses on the risk that the complained-of conduct threatens continuing or future injury, not on whether the plaintiff is entitled to a remedy for past misconduct. *See Martin*, 319 F.3d at 1050. Accordingly, plaintiff's motion to proceed in forma pauperis against Corizon Medical Review Board Members, John Does 1-3 must be denied, and his claims against them dismissed without prejudice.

### iv.    Defendant Langley

Plaintiff states that defendant Langley is a cook at the Northeast Correctional Center. On June 27, 2015, he claims that Langley, along with Allen and Getti, began giving him food items that were not on his medical diet. He also claims that he was told by Langley, at one time or another, that the food plaintiff received was all he was "going to get." Plaintiff alleges that on August 11, 2016, he told a nurse that Langley, along with Allen and Getti, kept telling him to get a tray off the line or do without. He does not, however, state exactly when this happened, how often it happened, and who actually told him this on each occasion. On March 19, 2018, plaintiff

states that he, along with two correctional officers, confronted Langley with a Renal Diet menu. Plaintiff alleges that Langley became upset that he had a menu and walked away without giving him his meal. Finally, on April 2, 2018, plaintiff states that when he went to get his diet tray, Langley told him that Dr. Paniagua and Allen had his diet tray stopped. According to plaintiff, Langley told him: "file on that."

Plaintiff's allegations concerning events taking place in 2015 are too far in the past and too vague to demonstrate imminent danger at the time of the filing. His allegation that on March 19, 2018, Langley refused to give him his diet tray states only a single instance of misconduct. He does not demonstrate how this single incident placed him in imminent danger of serious physical injury. Further, unlike with Dr. Paniagua and Allen, plaintiff never asserts that he filed a grievance against Langley, or that she was acting in retaliation against him. Indeed, he does not clarify whether Langley, as a cook, even had the authority to decide whether or not plaintiff received a diet tray. That is, it is unclear whether plaintiff is alleging that Langley decided on her own not to serve plaintiff his medical diet, or whether she merely followed the instructions of her superior. Plaintiff's allegations concerning April 2, 2018, make clear that it was Dr. Paniagua and Allen who had his diet tray stopped, not Langley. It is the stopping of the diet tray on April 2 that allegedly puts plaintiff in imminent danger due to his underlying medical needs. However, plaintiff has not alleged that Langley was responsible for that. Accordingly, plaintiff's motion to proceed in forma pauperis against Langley must be denied, and his claims against Langley dismissed without prejudice.

### v.    Defendant Getti

Plaintiff states that defendant Getti is a cook at the Northeast Correctional Center. He claims that on June 27, 2015, Getti, along with Allen and Langley, started giving him food items

that he is not allowed on his diet. He also alleges that sometime in 2016, Getti, along with Allen and Langley, told him to get a tray off the line or do without. These allegations are too distant and too vague to demonstrate that Getti's actions placed him in imminent danger of serious physical injury at the time he filed his complaint. Accordingly, plaintiff's motion to proceed in forma pauperis against Getti must be denied, and his claims against Getti dismissed without prejudice.

### D.  Plaintiff's Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel (Docket No. 7). "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). *See also Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013) ("In civil cases, there is no constitutional or statutory right to appointed counsel…Rather a court may request an attorney to represent any person unable to afford counsel"). When determining whether to appoint counsel for an indigent litigant, the Court considers relevant factors, such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time.  Plaintiff has demonstrated, at this point, that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be complex. The Court will entertain future motions for appointment of counsel as the case progresses.

**E.  Plaintiff's Motion for Appointment of Counsel or Alternatively Exemption From Initial Disclosure**

Plaintiff has filed a second motion for appointment of counsel, or alternatively, for exemption from initial disclosure. (Docket No. 8). As noted above, plaintiff's motion to appoint counsel is denied at this time. Further, plaintiff's motion for exemption from initial disclosure is denied as premature. Discovery will be set forth in a case management order, which will be issued after defendants have answered plaintiff's complaint.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis (Docket No. 2) is **GRANTED** as to defendants Miguel Paniagua and Larry Allen.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $2.04 within twenty-one (21) days of the date of this Order.  Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) this case number; and (4) the statement that the remittance is for an original proceeding.

 **IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon defendant Miguel Paniagua in his individual capacity. The defendant shall be served in accordance with the waiver agreement this Court maintains with Corizon Health, Inc.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon defendant Larry Allen in his individual capacity. The defendant shall be served in accordance with the waiver agreement this Court maintains with the Missouri Attorney General's Office.

**IT IS FURTHER ORDERED** that plaintiff's official capacity claims against Miguel Paniagua and Larry Allen are **DISMISSED** without prejudice. A separate Order of Partial Dismissal will be entered herewith. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's motion to proceed in forma pauperis is **DENIED** as to defendants Michael Whitlock, Mr. Lovelace, Corizon Medical Review Board Members, John Does 1-3, Denise Langley, and Mrs. Getti. *See* 28 U.S.C. § 1915(g).

**IT IS FURTHER ORDERED** that plaintiff's claims against defendants Michael Whitlock, Mr. Lovelace, Corizon Medical Review Board Members, John Does 1-3, Denise Langley, and Mrs. Getti are **DISMISSED** without prejudice, subject to plaintiff refiling his claims in a separate complaint and paying the $400 filing fee. A separate Order of Partial Dismissal will be entered herewith. *See* 28 U.S.C. § 1915(g).

**IT IS FURTHER ORDERED** that plaintiff's motion to appoint counsel (Docket No. 7) is **DENIED** at this time.

**IT IS FURTHER ORDERED** that plaintiff's motion for exemption from initial disclosure (Docket No. 8) is **DENIED** as premature.

**IT IS HEREBY CERTIFIED** that an appeal from this partial dismissal would not be taken in good faith.

Dated this  24th   day of July, 2018.


\s\  Jean C. Hamilton
JEAN C. HAMILTON
UNITED STATES DISTRICT JUDGE

25