**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **KENNETH G. CHARRON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:22cv722-SNLJ** |
| | ) | |
| **MIGUEL PANIAGUA, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM and ORDER</u>**

Plaintiff Kenneth Charron filed this lawsuit, *pro se*, claiming violations of his

Eighth Amendment rights under the United States Constitution. Plaintiff claimed

defendants Larry Allen and Dr. Miguel Paniagua were deliberately indifferent to

plaintiff's nutritional requirements and that one or both had retaliated against him by

interfering with his medical diets.  This Court granted defendants' motions for summary

judgment.  Plaintiff appealed only the grant of summary judgment in favor of defendant

Allen.  On appeal, the Eighth Circuit appointed counsel for plaintiff and ultimately

reversed.  The Eighth Circuit also noted that the issue of plaintiff's exhaustion of

administrative remedies was among the issues remaining open on remand.

Plaintiff's appellate appointed counsel was re-appointed for the purposes of

remand.  Before moving to the substance of plaintiff's claims on remand, defendant

sought to file a motion for summary judgment on the issue of plaintiff's exhaustion of

1

remedies.  Defendant Allen thus filed a motion, and, after an extended briefing schedule, the motion is ripe for disposition.

## I.     Factual Background

The following facts are undisputed except where indicated.  Plaintiff is and was at all relevant times an inmate incarcerated at the Northeast Correctional Center ("NECC") in the Missouri Department of Corrections ("MDOC").  Defendant Allen was at the relevant time employed by MDOC as a food service manager at NECC.  Plaintiff has multiple medical diagnoses, including cancer, renal problems for which he has had multiple surgeries, and a host of other issues.  Plaintiff has been on a variety of medical diets during his incarceration, and those diets are the subject of this lawsuit.

The administrative history of plaintiff's medical diets, their withdrawal, and plaintiff's attempts to resolve his complaints about the diets through the NECC's grievance process is complicated.  A timeline is helpful:

- October 31, 2014:  Plaintiff's right kidney is removed due to the presence of a malignant tumor.  Plaintiff is prescribed a renal diet.

- November 21, 2014: Nonparty Dr. Rardin orders discontinuation of renal diet because his renal function is stable.  Plaintiff's bland diet is increased to double portions around the same time upon recommendation from his urologist that plaintiff eat more.

- March 16, 2015:  Plaintiff's bland diet is renewed for another year.

- July 2, 2015: Plaintiff files an informal resolution request ("IRR"), No. 15-701, stating that defendant Allen interfered with plaintiff's medical diet by ordering meat be substituted with beans at his meals.

- July 15, 2015:  Nonparty Dr. Cabrera ordered plaintiff's diet switched back to a renal diet.

- August 27, 2015:  Plaintiff receives a response to IRR 15-701 explaining beans are acceptable at all meals on his bland diet and recommending he have it changed to a renal diet to better suit his needs.

- August 29, 2015:  Plaintiff files grievance for IRR 15-701, claiming for the first time that defendant Allen's wife (a nurse at the facility) had deleted Dr. Cabrera's ordered renal diet and concluding their actions were in retaliation for filing the IRR.

- November 4, 2015:  After not receiving a response to the grievance for 15-701, plaintiff files a grievance appeal claiming an unknown person had deleted more of his medical records in retaliation for filing the prior IRR and grievance.

- December 7, 2015:  A grievance appeal response informs Charron that his bland diet was renewed March 16, 2015 and that Dr. Cabrera had reinstated his renal diet on July 15, 2015.

- February 11, 2016:  Plaintiff requests his diet be modified to include double portions due to his concerns about weight loss.  That same day, nonparty

3

Dr. Jost declines to double plaintiff's renal diet because his BMI was normal.

- February 26, 2016:  Nonparty Dr. Brennen orders double renal diet due to plaintiff's weight loss.

- August 11, 2016:  Nonparty Stephanie Meyer orders plaintiff's diet changed to bland with double portions.

- August 12, 2016:  Plaintiff tells nonparty Dr. Rhodes that his renal diet had been stopped and he felt like he needed it due to bladder cancer and renal diagnosis.  Dr. Rhodes orders the renal diet to resume.

- August 17, 2016:  Plaintiff files a new IRR, No. 16-1076, with a draft 42 U.S.C.  § 1983 complaint regarding the change to his renal diet.  That IRR did not mention Allen by name.

- September 5, 2016:  IRR 16-1076 is resolved by discussion with plaintiff when plaintiff was shown his current renal diet ordered August 12.

- April 25, 2017:  Plaintiff's renal diet changed to allow double portions.

- July 21, 2017:  Nonparty Dr. Whitlock discontinues order for plaintiff's bland diet.

- July 27, 2017:  Plaintiff files IRR 17-1118 against Dr. Lovelace, claiming he had discontinued his renal diet.  The IRR states that Lovelace "did it because Mr. Allen complained about me and my diet."

- September 4, 2017:  Having not received a response to the IRR, plaintiff filed a grievance in 17-1118.

- September 9, 2017:  IRR response states that plaintiff's bland diet had been discontinued and that he had a current order for a renal diet.

- October 25, 2017:  Plaintiff receives a grievance response stating he was receiving regular evaluations and did not meet the criteria for a specialty diet.

- October 30, 2017:  Plaintiff files grievance appeal in 17-1118, reiterating his need for a renal diet.

- November 15, 2017:  Plaintiff receives a grievance response informing him that only his bland diet was discontinued, and that he had a current order for a renal diet.

- September 19, 2017:  Plaintiff alleges in a different lawsuit (against a pharmaceutical company) that his renal diet stopped on July 21, 2017. Plaintiff voluntarily nonsuits that lawsuit on February 6, 2018.

- January 18, 2018:  Defendant Allen emails Corizon Health[1] employees Harr and Meyer with subject "Renal Diets," stating that "over time these diets have been added back and probably should never have been."  Meyer (the Director of Operations for Corizon) responds, stating that her

---

[1] Corizon Health is the third party contractor that administers health care for MDOC prisoners.

understanding is that only offenders on dialysis should be on renal diets and that a review is needed.

- March 29, 2018:  Nonparty Regional Medical Director Dr. Jerry L. Lovelace discontinues plaintiff's renal diet.  That information is communicated to defendant Allen in an email from a nurse at NECC and states "4 of the 5 offenders that you requested a review of had renal diets discontinued today by Dr. Lovelace," and Charron was one of those four.

- April 5, 2018:  Plaintiff files IRR 18-411 against Allen and two others, claiming they had interfered with his renal diet orders in retaliation for using the grievance system.

- April 11, 2018:  Plaintiff receives an IRR response explaining that Dr. Lovelace had discontinued his renal diet per the instructions from Dr. Conley because diets were for inmates on dialysis only.

- April 17, 2018:  Plaintiff files grievance in IRR 18-411.  He complains that the IRR response did not address his retaliation complaints and adds that Allen interfered with his diet designation.

- April 26, 2018:  Plaintiff receives grievance response explaining that his retaliation allegations must be untrue because the last time he filed a complaint regarding food service was 2015.  It repeats that he was removed from his renal diet because he is not on dialysis.

- May 2, 2018:  Plaintiff files a grievance appeal and alleges that the complaint records are wrong.

- May 7, 2018:  plaintiff files the complaint in this case.

- July 5, 2018:  Plaintiff receives grievance appeal response, denying his appeal.

This Court granted summary judgment to defendant Allen.  The Eighth Circuit held on appeal that this Court should have considered plaintiff's claims that Allen unlawfully interfered with plaintiff's physician-prescribed diet from 2015 to 2018.  Now, defendant moves again for summary judgment on the basis that plaintiff did not exhaust his administrative remedies with respect to those claims.

## II.    Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir.1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth affirmative evidence and specific

facts by affidavit and other evidence showing that there is a genuine dispute of a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex*, 477 U.S. at 324. "A dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Herring v. Canada Life Assur. Co.,* 207 F.3d 1026, 1030 (8th Cir. 2000) (quoting *Anderson,* 477 U.S. at 248). A party resisting summary judgment has the burden to designate the specific facts that create a triable controversy. *See Crossley v. Georgia–Pacific Corp.,* 355 F.3d 1112, 1114 (8th Cir. 2004). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights,* 2 F.3d 276, 279 (8th Cir. 1993).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Matsushita,* 475 U.S. at 587; *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). (emphasis added).

With these principles in mind, the Court turns to the discussion.

## III.   Discussion

Defendant Allen argues that plaintiff's failure to exhaust the available administrative remedies for his claims against Allen requires that this Court again grant summary judgment to Allen on those claims.

### A.  Exhaustion requirements

The Prison Litigation Reform Act ("PLRA") requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purpose of exhaustion is to allow "a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) (per curiam) (quoting *Bock*, 549 U.S. at 219). Administrative remedies are defined by the prison and are exhausted where an inmate has used and properly followed all required steps. *Woodford v. Ngo*, 548 U.S. 81, 81 (2006). Because failure to exhaust under the PLRA is an affirmative defense, it is the defendant's burden to plead and to prove it. *Foulk v. Charrier*, 262 F.3d 687, 697 (8th Cir. 2001).

MDOC generally requires offenders to file an informal resolution request ("IRR"), a grievance, and then a grievance appeal to administratively exhaust a claim. *See Hammett*, 681 F.3d at 947 ("After receiving the grievance appeal response, the inmate 'has exhausted the grievance process.'") (quoting MDOC policy); *Perry v. Figge*, 2014 WL 2818666, at *3 (E.D. Mo. June 23, 2014).

### B.  Plaintiff's claims

Plaintiff claims that Allen violated his rights when Allen interfered with plaintiff's physician-prescribed diets, retaliated against plaintiff for complaining about that interference, and ultimately caused cancellation of plaintiff's renal diet.  As explained above, plaintiff must have exhausted his administrative remedies with the prison in order to bring those claims in Court.  In sum, "[f]or a Missouri prisoner to exhaust all administrative remedies, he must file: (i) an informal resolution request ("IRR"); (ii) a grievance; and (iii) a grievance appeal." *Perry*, 2014 WL 2818666, at *3; *see also Flowers-Bey v. Anderson*, No. 2:19-CV-00070-SRC, 2021 WL 4243169, at *7 (E.D. Mo. Sept. 17, 2021). Filing an IRR is "[t]he first attempt to resolve an offender's complaint through discussion between the offender and the appropriate staff with documentation of this attempt." *Toney v. Hakala*, 2012 WL 1185028, at *2 (E.D. Mo. Apr. 9, 2012). "Each IRR is limited to one grievable issue and should not be expanded to include other issues at any stage of the review process." *Id.*

 Plaintiff filed four IRRs that pertain to his claims --- one each in 2015, 2016, 2017, and 2018.

Defendant Allen's first point is that plaintiff did not raise retaliation claims in his 2015 IRR until he filed his grievance, midway through the grievance process.  As a result, he did not properly exhaust those claims because he did not file an IRR on those claims.  *See Flowers-Bey*, 2021 WL 2818666, at *3.

In addition, although plaintiff did file an IRR related to cancellation of his renal diet and retaliation claims in 2018, and he filed a grievance appeal on May 2, 2018, plaintiff filed the complaint in this case on May 7, only five days after filing the appeal

and long before plaintiff received the grievance appeal response on July 5. Plaintiff apparently waited only five days before filing his complaint. He suggests that the prison's failure to timely respond to a grievance appeal could be a basis to show plaintiff had exhausted available remedies, but plaintiff waited only five days to file his lawsuit. MDOC policy states an appeal will be answered within 100 days. [Doc. 94-1 at 17.] Plaintiff skipped the step of waiting for a grievance appeal response, and doing so meant that he did not exhaust the grievance process. *See Hammett*, 681 F.3d at 947.

Plaintiff's 2016 IRR alleged plaintiff had been removed from his renal diet. That IRR was resolved after plaintiff was assured his renal diet remained in effect. Plaintiff did not pursue a grievance or grievance appeal, and thus any claim brought in that IRR was not exhausted to the extent any remained unresolved.

Finally, defendant argues that substance of the 2017 IRR was not against Allen and thus could not serve to exhaust any claim against him. The IRR states that Dr. Lovelace discontinued plaintiff's medical diet on July 21, 2017. It further says that Dr. Lovelace took that action because "Mr. Allen complained about me and my diet." The remainder of the grievances and responses do not address defendant Allen specifically, so, defendant argues, the "process provided nothing meaningful as to any claim against Allen." [Doc. 83 at 8.] This Court disagrees. The benefits of the exhaustion requirement, as identified by the Supreme Court include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007). "Early notice to those who might later be sued...has not been thought

11

to be one of the leading purposes of the exhaustion requirement.  *Id.*  "Exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances."  *Id.*  Plaintiff's 2017 IRR provided the prison with an opportunity to resolve disputes before litigation, and he followed through the grievance and grievance appeal process to exhaustion.

This Court thus finds that the 2017 IRR was properly exhausted and that as a result plaintiff's claims related to that IRR—namely, that defendant Allen interfered with and caused cessation of plaintiff's renal diet—may continue.  It appears that plaintiff in fact still had a renal diet ordered at the time of plaintiff's IRR and that only his bland diet was discontinued.  However, plaintiff continued to complain that he needed a renal diet, so it is unclear whether plaintiff was actually receiving a renal diet during that time.  That is a matter for a later stage in this litigation.

Defendant's motion for summary judgment also seeks judgment on the substance of plaintiff's claims that pertain to the IRRs from 2016 and 2018.  Because plaintiff did not exhaust his administrative remedies as to those claims, this Court need not address defendant's substantive arguments.

## IV.    Conclusion

Plaintiff did not exhaust his administrative remedies with respect to claims related to his IRRs from 2016 and 2018 (i.e., retaliation and claims related to cancellation of plaintiff's renal diet in 2018).  Plaintiff did exhaust his administrative remedies with respect to plaintiff's 2017 IRR (related to Allen's interference with plaintiff's physician-ordered diet).  Plaintiff's claims are thus dismissed without prejudice under the PLRA to the extent they were not raised in his 2017 IRR, No. 17-1118.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Larry Allen's motion for summary judgment is GRANTED in part and DENIED in part, as explained herein.

Dated this 20th day of March, 2023.

STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE